UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

BIODIAGNOSTIC LABS, INC.,                                    :
                                                             :
                              Plaintiff,                     :
                                                             :
              -against-                                      :        23-cv-9570 (BMC)
                                                             :
AETNA HEALTH INC. (New York); AETNA BETTER                   :
HEALTH INC. (Illinois); and MERITAIN HEALTH,                 :
INC,                                                         :
                                                             :
                              Defendants.                    :
---------------------------------------------------------------- X

BIODIAGNOSTIC LABS, INC.,                                    :
                                                             :
                              Plaintiff,                     :
                                                             :
              -against-                                      :        23-cv-9571 (BMC)
                                                             :
ANTHEM HEALTHCHOICE ASSURANCE, INC.                          :
d/b/a Anthem Blue Cross and Blue Shield; ANTHEM              :
HEALTHCHOICE HMO, INC. d/b/a Anthem Blue Cross               :
and Blue Shield; and HEALTH CARE SERVICE                     :
CORPORATION,                                                 :
                              Defendants.                    :
---------------------------------------------------------------- X

BIODIAGNOSTIC LABS, INC.,                                    :
                                                             :
                              Plaintiff,                     :
                                                             :
              -against-                                      :        23-cv-9572 (BMC)
                                                             :
UNITEDHEALTH GROUP, INC.; UNITED                             :
HEALTHCARE OF NEW YORK, INC.; UNITED                         :
HEALTHCARE INSURANCE COMPANY OF                              :
NEW YORK, INC.; UNITED HEALTHCARE                            :
INSURANCE COMPANY; UMR, INC.; and                            :
OXFORD HEALTH PLANS (NY), INC,                               :
                                                             :
                              Defendants.                    :
---------------------------------------------------------------- X

```
-------------------------------------------------------------- X
BIODIAGNOSTIC LABS, INC.,                                      :
                                                               :
                         Plaintiff,                            :
                                                               :      23-cv-9594 (BMC)
                         -against-                             :
                                                               :
CIGNA HEALTHCARE BENEFITS, INC.; CIGNA                         :
HEALTHCARE, INC.; and MVP HEALTH CARE, INC.,:
                                                               :
                         Defendants.                           :
-------------------------------------------------------------- X
BIODIAGNOSTIC LABS, INC.,                                      :
                                                               :
                         Plaintiff,                            :
                                                               :      23-cv-9605 (BMC)
                         -against-                             :
                                                               :
EMBLEMHEALTH, INC.; and EMBLEMHEALTH                           :
PLAN, INC.,                                                    :
                         Defendants.                           :
-------------------------------------------------------------- X
BIODIAGNOSTIC LABS, INC.,                                      :
                                                               :
                         Plaintiff,                            :
                                                               :      23-cv-9606 (BMC)
                         -against-                             :
                                                               :
NEW YORK QUALITY HEALTHCARE                                    :
CORPORATION; and WELLCARE HEALTH PLANS,                        :
INC.,                                                          :
                         Defendants.                           :
                                                               :
-------------------------------------------------------------- X
BIODIAGNOSTIC LABS, INC.,                                      :
                                                               :
                         Plaintiff,                            :
                                                               :      23-cv-9607 (BMC)
                         -against-                             :
                                                               :
 HEALTHFIRST PHSP, INC.,                                       :
                                                               :
                         Defendant.                            :
-------------------------------------------------------------- X
```

```
------------------------------------------------------------------ X
BIODIAGNOSTIC LABS, INC.,                                          :
                                                                   :
                            Plaintiff,                             :
                                                                   :        23-cv-9608 (BMC)
                    -against-                                      :
                                                                   :
METROPLUS HEALTH PLAN,                                             :
                                                                   :
                            Defendant.                             :
                                                                   :
------------------------------------------------------------------ X
```

**COGAN**, District Judge.

     Plaintiff Biodiagnostic Labs, Inc. has brought eight actions against various medical health insurance companies or benefit payment managers. The cases have been consolidated for decision on defendants' motions to dismiss since those motions raise the same legal issues.

     Plaintiff is a medical testing laboratory that does not participate in any of the defendants' health care plans. Some of those plans are ERISA-governed plans, and some are not. During the COVID-19 pandemic until May 2023, plaintiff provided thousands of COVID-19 tests to insureds of defendants and their affiliates. Plaintiff posted the prices for its tests on its website, the highest of which was a $180 charge for a SARS COVID PCR test. Each of plaintiff's patients (defendants' insureds) agreed to assign their right to insurance coverage for the tests to plaintiff.

     Defendants paid for many of the tests that plaintiff performed for their insureds in full and remitted payment directly to plaintiff. However, defendants did not pay or only partially paid for other tests. Plaintiff is suing to be paid for those tests, claiming that the insureds have a right to reimbursement which they have assigned to plaintiff.

## I.      The CARES Act claim

All defendants seek to dismiss the Fourth Claim for Relief in plaintiff's operative

complaints under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136,

better known as the CARES Act.  That statute provides that a "group health plan or health

issuer" providing coverage of medical services as defined in its companion statute, Section

6001(a) of the Families First Coronavirus Response Act ("FFCRA") has to reimburse an out-of-

network provider of diagnostic testing (like plaintiff) as follows:

> If the health plan or issuer does not have a negotiated rate with such provider [of
> the diagnostic testing], such plan or issuer shall reimburse the provider in an
> amount that equals the cash price for such service as listed by the provider on a
> public internet website, or such plan or issuer may negotiate a rate with such
> provider for less than such cash price.

CARES Act, Pub. L. 116-136, § 4303(a)(2).  The issue defendants have raised is whether this

statute creates a private right of action in favor of diagnostic laboratories like plaintiff, or

whether the statute can only be enforced by the appropriate federal agencies.

Businesses like plaintiff have repeatedly brought suits like this one in other courts.  In

every instance, the courts, including the Ninth Circuit (the only Court of Appeals to have

considered the issue), have dismissed them on the ground that there is neither an express nor

implied private right of action under the CARES Act.  See Saloojas, Inc. v. Aetna Health of Cal.,

Inc., 80 F.4th 1011, 1016 (9th Cir. 2023); Genesis Lab. Mgmt. LLC v. United Health Group,

Inc., No. 21-cv-12057, 2023 WL 2387400, at *3 (D.N.J. March 6, 2023); Diagnostic Affiliates of

Northeast Houston, LLC v. Aetna, Inc., 654 F. Supp. 3d 595, 611 (S.D. Tex. 2022); Murphy

Med. Assocs., LLC v. Cigna Health & Life Ins. Co., No. 20-cv-1675, 2022 WL 743088, at *5

(D. Conn. Mar. 11, 2022); GS Labs, Inc. v. Medica Ins. Co., No. 21-cv-2400, 2022 WL

4357542, at *8 (D. Minn. Sept. 20, 2022); Profiles, Inc. v. Bank of Am. Corp., 453 F. Supp. 3d

742, 748 (D. Md. 2020); Shehan v. U.S. Dep't of Just., No. 20-cv-00500, 2020 WL 7711635, at

*11 (S.D. Ohio Dec. 29, 2020); Am. Video Duplicating, Inc. v. City Nat'l Bank, No. 20-cv-

04036, 2020 WL 6882735, at *5 (C.D. Cal. Nov. 20, 2020); Matava v. CTPPS, LLC, No. 20-cv-

01709, 2020 WL 6784263, at *1 (D. Conn. Nov. 18, 2020).

The Ninth Circuit's reasoning in Saloojas is representative of all the other decisions on

this issue.  To ascertain whether the CARES Act provides a private right of action in favor of

laboratories,  it began by quoting the familiar four factor test from Cort v. Ash, 422 U.S. 66

(1975):

> First, is the plaintiff one of the class for whose especial benefit the statute was
> enacted – that is, does the statute create a federal right in favor of the plaintiff?
> Second, is there any indication of legislative intent, explicit or implicit, either to
> create such a remedy or to deny one?  Third, is it consistent with the underlying
> purposes of the legislative scheme to imply such a remedy for the plaintiff?  And
> finally, is the cause of action one traditionally relegated to state law, in an area
> basically the concern of the States, so that it would be inappropriate to infer a
> cause of action based solely on federal law?

Saloojas, 80 F.4th at 1014 (quoting Cort, 422 U.S. at 78).  The Ninth Circuit then noted that what

these factors boil down to is the "central inquiry [of] whether Congress intended to create, either

expressly or by implication, a private right of action."  Saloojas, 80 F.4th at 1014.  It observed

that since Cort, the Supreme Court had "essentially collapsed the Cort test into this single focus,"

and that the statutory language was the most important guidepost in answering the question.  Id.

The Ninth Circuit observed that the Supreme Court had set forth the four-factor test in

Cort because prior to that decision, courts had been too willing to imply a private right of action;

Cort was meant to pull back on that tendency and leave the creation of private rights of action to

Congress.  As the Ninth Circuit noted, the Supreme Court has continued in its hesitancy to imply

private rights of action.  See Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 67 n.3 (2001)

("Since our decision in [J.I. Case Co. v.] Borak, [377 U.S. 426 (1964)], we have retreated from our previous willingness to imply a cause of action where Congress has not provided one.").

Consistent with the circumspection about implied private rights of action, the Saloojas court rejected the plaintiff's contention that because the statute is phrased in mandatory terms – "shall reimburse" – there must be a private right of action. Rather, the Court held that because the statute is focused on the insurers' obligation, and not any rights of the provider, a private right of action cannot be inferred:

> [T]he focus of the provision is on the regulated party – the 'group health plan or … health insurance issuer' – and the diagnostic test 'provider' is only the object of the obligation. Accordingly, § 3202(a)(2) of the CARES Act does not contain rights-creating language that would evince Congress's intent to create a private right of action for providers to sue insurers.

Saloojas, 80 F. 4th at 1015. Another major consideration for the Court was that the CARES Act and FFRCA do contain enforcement mechanisms – the statutes provide for the Secretaries of Health and Human Services, Labor, and the Treasury to enforce their provisions. "[T]he fact that these provisions provide an enforcement mechanism but only through the Secretaries suggests a lack of congressional intent to create a private right of action for providers." Id.

Against Saloojas and the unbroken line of authority that precedes it, plaintiff asks me to find that the Ninth Circuit, and every other court to consider this issue, has misapplied the Cort v. Ash factors. Plaintiff argues that the Second Circuit's test for determining the existence of a private right of action is broader than that of the Ninth Circuit, or that it more literally applies the Cort v. Ash factors. I disagree. Just like the Ninth Circuit, the Second Circuit distills the Cort factors into a test of congressional intent and focuses on the language of the statute. As the Second Circuit has stated:

> Although we focus our analysis on the single question of whether congressional intent to create a private cause of action can be found in the relevant statute, we may apply the four <u>Cort</u> factors in order to illuminate our analysis of congressional intent.  Absent evidence of such intent, the Supreme Court has directed that "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286-87 (2001).  To find evidence of Congress's implied intent to create a private right of action, we look to the "text and structure" of the statute.  <u>Id.</u> at 288.

<u>M.F. v. State of New York Exec. Dept. Div. of Parole</u>, 650 F.3d 491, 495 (2d Cir. 2011) (some citations and quotations omitted).  If there is any difference in the Ninth Circuit's and the Second Circuit's analytical framework, it is too subtle to make any practical difference in its application.

In any event, plaintiff has twisted the <u>Cort v. Ash</u> factors to arrive at a false determination of congressional intent.  Plaintiff contends, first, that it is "one of the class for whose especial benefit the statute was enacted."  Plaintiff reaches this conclusion because the CARES Act requires insurers to pay its posted rates.  But that is a simplistic view of whom Congress was trying to benefit.  There was no crisis in the laboratory testing industry that Congress sought to remedy by passing this statute.  There was no backlog of unpaid bills that threatened to drive testing labs out of business.  The CARES Act was not a panacea for any problems facing the laboratory testing industry.

Rather, the obvious purpose of this provision of the CARES Act was to encourage patients who were symptomatic or exposed to COVID-19 to get tested by relieving them of financial concern that might deter them from obtaining such testing.  Surely we have not forgotten the extraordinary outreach effort that the Government undertook throughout the pandemic to achieve this goal.  Those patients were "the class for whose especial benefit the statute was enacted," not businesses like plaintiff.  At most, plaintiff could be a collateral beneficiary of the effort to get patients tested.  But being part of the method to achieve

Congress's goal is not the same as being part of a special class for whose benefit the statute was enacted.

For the same reason, plaintiff misapplies the other Cort factors.  It relies solely on the mandatory language requiring insurers to pay.  Plaintiff argues that "[i]t is not cognizable that Congress intended to provide the medical providers a right to be paid and intend for there to be no remedy for payment" and "[c]orporate greed being what it is, it is to be expected that absent medical providers having the right to sue for payment[,] medical insurers will be disinclined to pay."[1]  But as the Ninth Circuit recognized in Saloojas (and as have other courts as well), there is an enforcement mechanism:  the Secretaries of three federal departments can bring enforcement actions.

Plaintiff misreads the CARES Act and FFCRA to contend that not even the Secretaries can enforce its provisions.  It contends that "[o]ne can read § 6001(b) and (c) all day and not find there any enforcement mechanism applicable to medical providers who performed COVID tests.  But one does not have to read the statute all day to find it.  Section 6001(b) of the FFCRA states:

> Enforcement. – The provisions of subsection (a) shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans and health insurance issuers offering group or individual health insurance coverage as if included in the provisions of part A of title XXVII of the Public Health Service Act, part 7 of the Employee Retirement Income Security Act of 1974, and subchapter B of chapter 100 of the Internal Revenue Code of 1986, as applicable.

Pub. L. 116-127 § 6001(b).  The reference to "subsection (a)" is to section 6001(a)(1), the provision that requires insurance companies to pay for COVID-19 diagnostic tests.  Thus, subsection (b) makes this obligation enforceable just like any other ERISA, Public Health

---

[1] It is not clear what plaintiff means by referring to "corporate greed" or "what it is," especially considering that plaintiff is itself a corporation.

Service Act, or Internal Revenue Code obligation – and the Secretaries are expressly granted enforcement responsibilities for those statutes.

The fact that there is such a remedy does not leave the statute unenforceable; it simply means that plaintiff does not like the enforcement mechanism that Congress has chosen. That is not enough to imply a private right of action.

## II.    ERISA Preemption

In addition to attempting to bring a claim under the CARES Act, plaintiff has also asserted three claims which it has labeled as breach of contract claims. The first claim is for breach of the insurer's obligation to pay benefits to the insured, a right which plaintiff alleges it has acquired by accepting an assignment of patients' claims against defendants, and that one of the terms of that contract, pursuant to the CARES Act, was to pay plaintiff its posted rates. The second claim is for breach of an implied contract, essentially promissory estoppel, on the theory that defendants knew plaintiff was relying on the CARES Act and never disclaimed an obligation to pay plaintiffs' posted rates. The third claim, although also titled as "breach of contract," uses the language of unjust enrichment as a result of defendants not paying what they allegedly owe under the CARES Act.

Defendants contend that to the extent plaintiffs' claims fall under ERISA-governed health plans, they are preempted by ERISA, and plaintiff must pursue the dispute resolution procedures set forth in ERISA and in those plans. I agree with defendants. Each of plaintiff's three putative contract claims expressly reference the CARES Act and the FFCRA, and those statutes incorporate ERISA when they are applied to ERISA-governed plans. The reasoning in Genesis Lab. Mgmt., 2023 WL 2387400, at *4 (citing Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co., No. 20-cv-10345, 2022 WL

1567797, at *4 (D.N.J. May 18, 2022)), is persuasive: "[B]ecause 'who' is responsible for providing coverage for COVID-19 testing under Sections 6001(a) and (d) of the FFCRA, is defined via cross-reference to ERISA, then 'at the very least, [the FFCRA's] requirement of COVID-19 testing coverage is intended to interlock with ERISA." See also Murphy Med. Assocs., 2022 WL 743088, at *10-11; BCBSM, Inc. v. GS Labs, LLC, No. 22-cv-513, 2023 WL 2044329, at *10 (D. Minn. Jan. 30, 2023) (finding claims for additional reimbursement under the CARES Act/FFCRA are enforceable through ERISA's remedial scheme); Saloojas, Inc. v. Aetna Health of Cal., Inc., No. 22-cv-02887, 2022 WL 4775877, at *3 (N.D. Cal. Sept. 30, 2022) ("[T]he CARES Act and FFCRA incorporate and harmonize with ERISA's enforcement scheme.").

Invoking ERISA's express preemption provision based on this is consistent with the definition of when preemption should apply; preemption is proper when "the existence of a[n] [ERISA] plan is a critical factor in establishing liability." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40 (1990). Because the CARES Act and FFCRA incorporate ERISA with regard to ERISA-governed plans, and the very basis of plaintiff's three contract claims is those statutes, the claims that plaintiff has made against ERISA-governed policies are preempted.

### III.     Non-ERISA Policies

That does not fully resolve this case, however, because at least some of plaintiff's claims apparently do not fall under ERISA-governed policies. And no one, at least for purposes of these motions, seems to know which ones. Defendants assert that it is plaintiff's responsibility to separately plead claims that fall under non-ERISA-governed policies; plaintiff asserts that it cannot do that because defendants have the policies and it is impractical, unreasonable, and not

required by Rule 8(a) to particularize each claim.  It would require plaintiff to contact each patient, get a copy of the policy, and then determine whether the policy falls under ERISA or not.

Although defendants cite a couple of cases that summarily place this burden on the plaintiff, see e.g. Aventus Health, LLC v. United Healthcare Inc., No. 22-cv-2408, 2023 WL 11724679, at *3 (M.D. Fla. Sept. 8, 2023), I agree with plaintiff that it is unreasonable to do that. Defendants are in a better position to look at each claim and measure it against the terms of the particular policy under which it falls.  That is their business, after all.  It is not plaintiff's business.

Nevertheless, it is not necessary to parse through each claim in this action to determine whether it is or is not made under an ERISA-governed policy.  As I have held above, if it falls under an ERISA-governed policy, then it cannot be heard in this Court because ERISA preempts it.  And if it does not fall under an ERISA-governed policy, then this Court has no subject-matter jurisdiction to hear the claim, or, at least, the early stage of the cases compels the Court to decline exercising supplemental jurisdiction.  See N.Y. Mercantile Exchange, Inc. v. Intercontinental Exchange, Inc., 497 F.3d 109, 119 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Given plaintiff's opposition to ERISA preemption, it is ironic that plaintiff attempts to persuade this Court to exercise supplemental jurisdiction over its non-ERISA policy claims. Plaintiff's argument, however, is that even without ERISA, each of its three state law contract claims seek to incorporate the pricing mechanism in the CARES Act, and that is sufficient basis to confer jurisdiction.  However, that is not enough.

In Link Motion Inc. DLA Piper LLP, __ F. 4th __ , 2024 WL 2887660 (2d Cir. June 10, 2024), the Second Circuit recently revisited the requirements for when the presence of federal

law issues in a state law claim are sufficient to confer federal jurisdiction.  The Court recognized that there is a "slim category" of such cases if "the embedded federal issue [is] (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Link Motion, 2024 WL 2887660, at *4 (quoting Gunn v. Minton, 568 U.S. 251, 258 (2013)).

Plaintiff has made no showing as to any of these requirements to trigger this narrow exception to the rule that for federal jurisdiction to obtain, federal law must create the claim and it must appear on the face of the pleading.  See Gunn, 568 U.S. at 257 ("Most directly, a case arises under federal law when federal law creates the cause of action asserted.").  There is no indication that defendants are disputing what the CARES Act says, or any reason to believe that there will be a need to interpret the CARES Act in a way that will have collateral consequences or create any risk of non-uniformity in federal law.  As alleged by plaintiff, these are simple breach of contract claims in which any reference to the CARES Act will be only to measure what damages plaintiff is owed if it can establish the existence of the alleged contract (or quasi-contract), and it is not even clear that there will be any dispute about that.  The state courts are fully capable of adjudicating the issue of plaintiff's status as assignee, or whether a contract was formed by promissory estoppel, or whether defendants have been unjustly enriched, and those determinations – either way – will have no substantial impact on federal law.

The authorities have been consistent that finding a federal issue in a state claim and using it as a basis for federal jurisdiction is "an extremely rare exception," Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing, 545 U.S. 308, 317 n.5 (2005), to the source of federal-question jurisdiction and applies only in "a special and small category of cases."  Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006); see also

NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010, 1019 (2d Cir. 2014)

("[T]he Supreme Court has been sparing in recognizing state law claims fitting this criterion.").

Plaintiff's cases do not fall within that category.

## CONCLUSION

Defendants' motions to dismiss are granted.  Plaintiff's claims under the CARES Act (fourth claim for relief) are dismissed for failure to state a claim as there is no private right of action.  Plaintiff's state law claims (first through third claims for relief), to the extent they arise under ERISA-governed plans, are dismissed as preempted by ERISA, and to the extent they arise under non-ERISA governed plans, they are dismissed without prejudice to recommencement in state court.

**SO ORDERED.**

*Brian M. Cogan*

_____
U.S.D.J.

Dated: Brooklyn, New York
      June 23, 2024